UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARTIS EXZOLUS WILLIS,

      Plaintiff,     Civil Action No. 15-11258
                Honorable Matthew F. Leitman
v.              Magistrate Judge David R. Grand

GREEN TREE SERVICING, LLC
and CITIMORTGAGE,

      Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT [10, 11]

**I. RECOMMENDATION**

*Pro se* plaintiff Dartis Exzolus Willis ("Willis") commenced this action against Green Tree Servicing, LLC ("Green Tree") and Citimortgage ("CMI") (collectively "defendants") alleging, in effect, that they wrongfully foreclosed on his property. Before the Court are both Green Tree's and CMI's motions to dismiss Willis's complaint [10, 11]. Willis filed a response [13], to which Green Tree and CMI filed replies [14, 15].[1] The motions have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the Court RECOMMENDS that both of the motions [10, 11] be GRANTED.

---

[1] Although Willis labeled his filing as both a "motion to strike" and a "motion to dismiss defendant[s'] answers" pursuant to Fed R. Civ. P. 12(b)(6) [13 at 1, 2, 8], the document clearly was intended to address the arguments raised by Green Tree and CMI in their respective motions. Accordingly, the Court will treat Willis's filing as a response to Green Tree's and CMI's motions, and the defendants' "responses" [14, 15] to Willis' filing as their reply papers.

## II.    REPORT

### A.    Background

On November 15, 2005, Willis executed a mortgage and promissory note with Oak Tree Mortgage, LLC ("Oak Tree") in the amount of $112,000. [11, Ex. C at 1].[2]   The note was secured by a mortgage on Willis' property located at 25835 Woodward Ave, Unit 104, in Royal Oak, Michigan (the "Property"), which was duly recorded in the Oakland County Register of Deeds on December 2, 2005. [*Id.* at 1, 3].   The mortgage listed Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee and provided that MERS could sell the Property in the event Willis defaulted on his obligations. [*Id.* at 11].   On August 15, 2013, MERS assigned the mortgage to CMI and the assignment was duly recorded in the Oakland County Register of Deeds on September 6, 2013. [*Id.*, Ex. D].

What happened in the interim is not entirely clear.   While Willis declines to acknowledge whether he defaulted on the note, he alleges in his complaint that "the necessary UCC

---

[2] A reviewing court's consideration of a motion to dismiss under Rule 12(b)(6) is ordinarily confined to the pleadings. *Jones v. City of Cincinnati,* 521 F.3d 555, 562 (6th Cir. 2008).   Thus, assessment of the complaint's facial sufficiency ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.,* 607 F.3d 1102, 1104 (6th Cir. 2010).   However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 335-36 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino,* 593 F.3d 459, 463 n.1 (6th Cir. 2010).   Moreover, if a document is not attached to a complaint or answer, but "is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.,* 508 F.3d at 335–36.   Similarly, where the plaintiff's pleadings do not refer directly to a given document, if that document governs the plaintiff's rights and is necessarily incorporated by reference, then the court may consider it without converting the motion into one for summary judgment. *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997) (holding that plan documents could be incorporated without converting the motion to one for summary judgment even though the complaint referred only to the "plan" and not the accompanying documents).   In addition, "[a] court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Northville Downs v. Granholm,* 622 F.3d 579, 586 (6th Cir. 2010) (quoting *Commercial Money Ctr.,* 508 F.3d at 335–36).   All of the documents referenced herein satisfy these standards.

documentations" to eliminate his obligation to pay the note's remaining balance were filed with the Ohio Secretary of State on April 26, 2013. [1 at 2]. These purported documentations" include: (1) a quitclaim deed conveying title in the property from Willis to an entity named "The Federal Reserve Bank of Fite & Co. Holdings" [*Id.*, Ex. 1 at 4]; (2) a UCC Financing Statement filed by the Federal Reserve Bank of Fite & Co. Holdings purportedly notifying Oak Street, HSBC Mortgage Services, and CMI of its ownership interest in the Property [13, Ex. 1 at 2-3]; and (3) an unrecorded reverse mortgage between Willis and "The Federal Reserve Association of Fite & Co. Holdings" dated April 22, 2013 [*Id.*, Ex. 1 at 12-26].[3] In any case, CMI commenced foreclosure proceedings in December 2013 by publishing the foreclosure notices in the Oakland County Legal News for four consecutive weeks. [11, Ex. A at 4]. On January 21, 2014, CMI purchased the Property at a sheriff's sale for $118,709.52. [*Id.*, Ex. E at 1].

On September 9, 2014, after the redemption period had already expired (on July 21, 2014 [10, Ex. 1 at 7]), Willis initially filed suit in the United States District Court for the District of Columbia. [1, Ex. 2]. The assigned district judge generously described Willis's complaint as "not the model of clarity," and declined to address its merits. [3]. Instead, he entered an order transferring the case to the United States District Court for the Eastern District of Michigan on the ground of improper venue. [3]. As far as the Court can discern, Willis makes the following allegations: (1) defendants should be collaterally estopped from dismissing his complaint on account of the disposition of another related matter in the United States District Court for the District of Columbia; (2) the mortgage is void because federal law prohibits national banks from lending money; (3) the foreclosure sale must be rescinded on the ground that CMI failed to

---

[3] Notwithstanding the fact that Willis's property is located in Michigan and that CMI commenced the foreclosure proceedings in Michigan under Michigan law, the UCC Financing Statement was allegedly filed in Ohio and requested an acknowledgement of filing to be sent to Eternal Light International, which is located in Canton, Ohio. [13, Ex. 1 at 2].

present the original note to the Court; (4) as applied, the Michigan foreclosure-by-advertisement statute violates the Due Process Clause of the Fourteenth Amendment; (5) defendants committed fraud because they did not tender anything of "substance or value" to Willis in consideration for the execution of the 2005 promissory note; and (6) the 2013 UCC Financing Statement, quitclaim deed, and reverse mortgage all have priority over the original 2005 mortgage.

In their motions to dismiss Willis's complaint, Green Tree and CMI assert that all of these arguments lack merit. Green Tree separately maintains that Willis fails to articulate any claims against it, and thus, his complaint does not meet the minimum pleading requirements set forth in Fed. R. Civ. P. 8(a).

## B.      Legal Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly,* 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th

4

Cir. 2007) (emphasis in original) (citing *Twombly,* 550 U.S. at 555–56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus,* 551 U.S. 89, 94 (2007). This tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal,* 556 U.S. at 678; *see also Twombly,* 550 U.S. at 555; *Howard v. City of Girard, Ohio,* 346 F. App'x 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 U.S. Dist. LEXIS 34441, at *7 (E.D. Mich. Mar. 30, 2011).

### C. Analysis

#### 1. *Rule 8 Dismissal*

As a preliminary matter, Willis's complaint contains three allegations that are nearly unintelligible. Quoting from the complaint, Willis asserts that: (1) Green Tree and CMI "deal in Internal Revenue Service ("IRS") cancelled debt and this IRS Federal 871 Tax Suit; Cause cited

as 26:7609 as an IRS Petition to Quash IRS Summons" [1 at 1]; (2) "Defendant[4] is clearly attempting to operate as a Deed of Trust state by initiating an open foreclosure proceeding in the Franklin County Court's jurisdiction"[5] [*id.* at 3]; and (3) "Defendant may have used" a "Pre-paid Treasury account…on behalf of Plaintiff, without Plaintiff's knowledge." [*Id.* at 5].

To the extent, these allegations can be construed as separate causes of action, they should be dismissed under Rule 8(a)(2) because they do not include a "short and plain statement" of the claims.  Without any additional information, it is impossible for the Court to evaluate whether these allegations are in any way connected to the foreclosure of Willis's residence.  In fact, where Willis attempts to provide some explanation of his third allegation, it reads as follows: "[t]he social security number account used by Defendant in the financing of the mortgage note is the system by which Plaintiff has financed the obligation with the Credit to offset and adjust the debt associated with the mortgage note to a zero balance for insurance purposes." [*Id.*].  Just exactly how a "social security number account" was used to finance "the obligation" with sufficient "credit" to offset the balance on the promissory note "associated with the mortgage" "for insurance purposes" is impossible to glean from the complaint's language.  It is also unclear *how* Willis believes this alleged process has damaged him.  Willis has clearly not satisfied his obligation to provide defendants with a "clear and plain statement" of these claims pursuant to Rule 8(a)(2).  *Agee v. Wells Fargo Bank*, 2010 WL 1981047, *2 (E.D. Mich.2010) ("As has been recognized by our circuit and others, despite liberal pleading requirements for *pro se* litigants, it

---

[4] For the most part, Willis does not differentiate between CMI and Green Tree.  Rather, he singularly addresses them as "Defendant" without clarifying which one of the defendants he is actually referring to.

[5] Again, the foreclosure sale in this case took place in Oakland County, Michigan.  Willis appears to be referring to Franklin County, Ohio.

is not the role of the court to guess the nature of the claim(s) asserted."). Here, as in *Agee*, since "no more than guessing could take place" as to Willis's claim, dismissal is appropriate. *Id.*

The Court similarly finds that Green Tree should be dismissed from this action altogether. Besides the opening sentence of the complaint naming Green Tree as a party defendant, the Court has not found a single reference to Green Tree anywhere else in the pleadings, the documents attached thereto, or in Willis's response to the instant motions. Under these circumstances, Willis's allegations do not meet the requirements of Rule 8(a)(2) because he has not given Green Tree "fair notice" of what his claims are and the grounds upon which they are based. *Twombly*, 550 U.S. at 555.

Even still, as demonstrated below, Willis's remaining claims are without merit regardless of whether or not they pertain to Green Tree.

### 2.    *Collateral Estoppel*

Next, Willis seemingly invokes the doctrine of collateral estoppel by claiming that "[t]his case is directly related to PENDING Case No. 1:14-CV-01112-CKK; now via DISMISSED Case No. 1:14-CV-00110-JDB that will create a conflict of interest to the U.S. Government Defendant and all Defendants to these actions," and, therefore, "this case [is] in direct relation to a PENDING case will remain open for Collateral Attack and all Defendants must default by silence as through a case dismissal did not occur, or be held in CONTEMPT and PERJURY with this Court." [1 at 1-2] (emphasis in original).

Under federal law, the application of collateral estoppel is appropriate where:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair

7

opportunity to litigate the issue in the prior proceeding.
*NAACP v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987).  None of these elements are present here.  The lawsuit that Willis references above was commenced by a different homeowner against a litany of government employees in Stark County, Ohio, all of whom were allegedly involved in the issuance of a "fraudulent foreclosure decree" by the Stark County Court of Common Pleas. *Bradley v. DeWine*, 55 F. Supp. 3d. 31, 35 (D.D.C. 2014). Consequently, the factual and legal issues presented in that case are wholly unrelated to the instant wrongful foreclosure claim.  Furthermore, the district court in *Bradley* dismissed the matter on jurisdictional grounds without ever having addressed the merits.  And neither Green Tree nor CMI had "a full and fair opportunity" to litigate any of the issues that arose in that proceeding. *NAACP*, 821 F.2d at 330.  Thus, Willis may not employ the doctrine of collateral estoppel to shield his complaint from dismissal.

### 3.    Violations of Federal Banking Law

Willis maintains that "any and all interests or sums [that he] paid to the Defendant to date" are "unlawful" and should be refunded to him because federal law prohibits national banks from lending money. [1 at 3].  In support of this proposition, Willis relies upon *Farmers' & Miners' Bank v. Bluefield Nat'l Bank*, 11 F.2d 83 (4th Cir. 1926), and *Bowen v. Needles Bank*, 94 F. 925 (9th Cir. 1899), two nearly century-old cases from two other circuits involving "situations in which a bank wanted to loan more money to a party than it had available in capital and surplus funds to legally cover so it executed its own promissory note with another bank in order to complete the transaction." *Smith v. Palasades Collection, LLC*, No. 07-176, 2007 U.S. Dist. LEXIS 28348, at *17 (N.D. Ohio Apr. 3, 2007).  Since Willis does not allege that either Green

Tree or CMI engaged in such practices, or explain how these practices are relevant to this case, the contention that defendants violated federal law by financing Willis's mortgage lacks merit.

### 4.    Production of the Original Note

Willis urges the Court to invalidate the foreclosure sale because "[d]efendant cannot produce the original 'wet ink signature' mortgage note it claims [Willis] owes an obligation on." [1 at 4]. The Court construes this language as a request to rescind the foreclosure sale on the ground that CMI failed to demonstrate its interest in the indebtedness before initiating the foreclosure process. Willis's attempt to challenge the foreclosure on this ground fails.

Non-judicial foreclosures, or foreclosures by advertisement, are governed by Michigan statutory law. *See* Mich. Comp. Laws § 600.3204; *Senters v. Ottawa Sav. Bank, FSB*, 503 N.W.2d 639, 641 (Mich. 1993). The statute not only governs the process for foreclosure, but also the parties' rights subsequent to the sale of the property. *Senters*, 503 N.W.2d at 641; *Conlin v. Mortgage Elec. Registration Sys.*, 714 F.3d 355, 359 (6th Cir. 2013) (citation omitted) ("While the statutory scheme provides certain steps that the mortgagee must go through in order to validly foreclose ... it also controls the rights of both the mortgagee and the mortgagor once the sale is completed."). A mortgagor is generally given six months after the date of the sheriff's sale to redeem his property. Mich. Comp. Laws § 600.3240(8). After that point (or whatever redemption period applies), the mortgagor's "right, title, and interest in and to the property" are extinguished. *Piotrowski v. State Land Office Bd.*, 4 N.W.2d 514, 517 (Mich. 1942); *see also Conlin*, 714 F.3d at 359; Mich. Comp. Laws § 600.3236. Michigan courts have held that once the redemption period has expired, the only way a property owner may challenge a foreclosure sale is by making "a clear showing of fraud, or irregularity." *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969). Furthermore, such fraud or irregularity "must relate to the

foreclosure procedure itself." *El-Seblani v. Indymac Mortg. Servs.*, No. 12-1046, 2013 U.S. App. LEXIS 635, *10 (6th Cir., Jan. 7, 2013). This standard is a high one. *Conlin*, 714 F.3d at 360. "The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside" after the redemption period expires. *Sweet Air Inv., Inc. v. Kenney*, 275 Mich.App. 492, 497 (2007) (quoting *United States v. Garno*, 974 F.Supp. 628, 633 (E.D. Mich. 1997) (citing *Detroit Trust Co. v. Agozzinio*, 280 Mich. 402, 405-06 (1937) and *Calaveras Timber Co. v. Michigan Trust Co.*, 278 Mich. 445, 450 (1936)).

As the Sixth Circuit has recently stated, "[w]hether the failure to make this showing is best classified as a standing issue[6] or as a merits determination, one thing is clear: a plaintiff-mortgagor must meet this 'high standard' in order to have a foreclosure set aside after the lapse of the statutory redemption period." *Conlin*, 714 F.3d at 359-60 (6th Cir. 2013). Here, there is no dispute that the redemption period has expired. Thus, to the extent Willis's complaint ultimately seeks to challenge any portion of the foreclosure proceeding, he can only do so by making a strong showing of fraud or irregularity.

---

[6] In a number of fairly recent, although unpublished cases, the Sixth Circuit has found that a mortgagor's ability to challenge a foreclosure sale after the expiration of the redemption period is not a "standing" issue *per se*. *See, e.g., El-Seblani*, 2013 U.S. App. LEXIS 635; *Houston v. U.S. Bank Home Mortg. Wisc. Servicing*, No. 11-2444, 2012 U.S. App. LEXIS 24196 (6th Cir. Nov. 20, 2012); *Munaco v. Bank of Am.*, No. 12-1325, 2013 U.S. App. LEXIS 2322, *6 n.2 (6th Cir. Jan. 31, 2013). *See also Pettey v. CitiMortgage, Inc.*, 2012 WL 3600342, at *4-5 (E.D. Mich., Aug. 21, 2012) (finding "no legal merit" to the argument that a mortgagor who loses his legal interest in a property because the redemption period has expired has no "standing" to bring an Article III challenge to pursue an interest in the foreclosed property). Accordingly, the question here is not whether Willis's has "standing" to challenge the foreclosure sale, but rather whether the factual allegations contained in his complaint are sufficient "to meet the high standard imposed by Michigan law on claims to set aside a foreclosure sale." *El-Seblani*, 2013 U.S. App. LEXIS 635 at *12. For the reasons discussed herein, his complaint's allegations clearly fail that standard.

Willis cannot meet that standard here.  His argument that he was entitled to receive the "wet ink" note as a condition precedent to the foreclosure proceedings against him is misplaced because "Michigan law does not require a lender to provide the borrower with the note prior to foreclosure." *Pakulski v. Clearvue Opportunity XXII, LLC*, No. 13-10169, 2013 U.S. Dist. LEXIS 63788, at *8 (E.D. Mich. May 3, 2013); *see* Mich. Comp. Laws § 600.3204.  Thus, any failure to provide him with the "wet ink" note prior to commencing the foreclosure cannot constitute an actionable fraud.

Therefore, any cause of action predicated upon the absence or duplication of the original note should be dismissed.[7]

### 5. Due Process

Alternatively, Willis argues that the Court would be violating his right to procedural due process if it allowed defendants to prevail in this matter without having produced the original note.  [1 at 5].  Procedural due process "at its core requires notice and an opportunity to be heard at a meaningful time and in a meaningful matter." *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (quotation omitted).  Under this standard, the Sixth Circuit has ruled that the notice requirements set forth in the Michigan foreclosure-by-advertisement statute, Mich. Comp. Laws § 600.3204,[8] "are not at odds with notions of due process" because "[t]he

---

[7] In a similar vein, Willis argues that "[f]iling or producing a 'COPY'" of the "Mortgage Note" amounts to counterfeiting "in violation of 18 USC section 474." [1 at 4-5].  This statute has no bearing on this case for two reasons.  First, it solely applies to the counterfeiting of "any obligation or other security of the United States," 18 U.S.C. § 474, which neither encompasses the mortgage nor the promissory note.  And second, the statute explicitly prohibits criminal conduct and does not provide Willis with a private right of action. *See DeMoss v. Citi Mortgage*, No. 10-10423, 2010 U.S. Dist. LEXIS 10093, at *5 (E.D. Mich. Feb. 5, 2010) (stating that plaintiff "provided no authority, and the Court is aware of none, which would allow [him] to privately enforce 18 U.S.C. § 474.").

[8] Mich. Comp. Laws § 600.3204 provides that: (1) A party may foreclose a mortgage by advertisement if all of the following circumstances exist:

statute requires notice and opportunities to cure the default or redeem the property at several points before the borrower's rights are fully extinguished." *Garcia*, 782 F.3d at 741.  Since the production of the original note is not one of these requirements, the Court will not run afoul of Willis's right to procedural due process by now ruling that defendants need not proffer the original note under Michigan law.

> ### 6.   *Fraud*

Willis further alleges that defendants committed fraud because: (1) he suffered "direct injury" due to "the well-known deceptive practices carried out by Defendant" [1 at 2]; (2) it was "concealment or misrepresentation" for the defendants to hide the fact that federal law prohibits national banks from loaning money [1 at 3]; and (3) defendants' point to "the mortgage agreement as free and clear title, when no substance or value was lent by Defendant to the Plaintiff." [1 at 6].

The elements of a fraud claim under Michigan law require a showing that: "1) the defendant made a material representation; 2) the representation was false; 3) when the defendant

---

(a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.

(b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage or, if an action or proceeding has been instituted, either the action or proceeding has been discontinued or an execution on a judgment rendered in the action or proceeding has been returned unsatisfied, in whole or in part.

(c) The mortgage containing the power of sale has been properly recorded.

(d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; 4) the defendant made the representation with the intention that the plaintiff would act upon it; 5) the plaintiff acted in reliance upon it; and 6) the plaintiff suffered damage." *Barter v. U.S. Bank, N.A.*, No. 10-11476, 2011 U.S. Dist. LEXIS 3780, at *9 (E.D. Mich. Jan 13, 2011) (citing *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976)).   Fraudulent concealment, or what some courts term "silent fraud," "contains the same elements as a general fraud claim, but requires circumstances that establish a legal duty to make a disclosure." *Mohlman v. Long Beach Mortg. Extinct Lender*, No. 12-10120, 2013 U.S. Dist. LEXIS 17074, at *18 (E.D. Mich. Feb. 8, 2013) (quotation omitted).

Pursuant to Fed. R. Civ. P. 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake."   Interpreting this requirement, the Sixth Circuit has held that complaints alleging fraud must specify "the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493, 509 (6th Cir. 2007); *see also Elsheick v. Select Portfolio Servicing, Inc.,* 566 F. App'x 492, 498 (6th Cir. 2014).

In the present case, defendants could not have fraudulently concealed federal banking law provisions that would have barred them from lending money to Willis because no such provisions exist.   And, if any such provisions did exist, they would be publicly available and not "concealed."   Additionally, Willis's barebones allegations that defendants engaged in "well-known deceptive practices" and improperly used "the mortgage agreement as free and clear title," both lack sufficient particularity under Rule 9 and *Bledsoe*.   As a result, Willis's fraud claim should be dismissed.

Insofar as Willis maintains that the mortgage should be voided because "no substance or value was lent by Defendant to the Plaintiff," this contention has been rejected by several courts in this district and the Court sees no reason to depart from this line of precedent. *See e.g. Keys v. Cent. Mortg. Co.*, No. 13-13818, 2014 U.S. Dist. LEXIS 154709, at *3-4 (E.D. Mich. Oct. 31, 2014) (holding that plaintiff's allegation that "he never received 'real money' for the mortgage note that he signed" failed to state a cognizable claim for relief); *Edwards v. Std. Fed. Bank, N.A.*, No. 08-12146, 2009 U.S. Dist. LEXIS 2590, at *9-10 (E.D. Mich. Jan. 14, 2009) (same).

7.      *UCC Filing Statement, Quitclaim Deed, and Reverse Mortgage*

Finally, Willis posits that the UCC Financing Statement, the quitclaim deed, and the reverse mortgage all have priority over the original 2005 mortgage. According to Willis, defendants have been unable "to prove ownership of said property prior to [the] purchase that produced a sheriff's deed" because the quitclaim deed, which was recorded on April 18, 2013, effectively transferred title to the Federal Reserve Bank of Fite & Co. Holdings before CMI initiated foreclosure proceedings in December 2013. [13 at 13]. This argument is meritless on two grounds.

First, Willis does not cite to any legal authority in support of his contention that the UCC Financing Statement filed with the Ohio Secretary of State undermined the validity of the foreclosure sale, which proceeded under Michigan Law. *See Yohaaness Vuaai El v. Mortgage Elec. Registry Sys.*, No. 08-14190, 2009 U.S. Dist. LEXIS 75582, at *4 (E.D. Mich. Jul. 30, 2009) (stating that UCC financing statement "fall[s] short of holding any legal authority.").

And second, the original mortgage recorded in December 2005 remained senior to any property interests that may have been later created by: (1) the April 2013 UCC Financing Statement filed with the Ohio Secretary of State; (2) the April 2013 quitclaim deed recorded in

14

the Oakland County Clerk's office; or (3) the unrecorded April 2013 reverse mortgage executed between Willis and "The Federal Reserve Association of Fite & Co. Holdings." *See* Mich. Comp. Laws § 565.29 ("Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.").

Moreover, MERS's August 2013 assignment of the original mortgage to CMI (which was recorded approximately one month later) did not subordinate the original mortgage to any property interest that may have already been created by the April 2013 UCC Financing Statement, quitclaim deed, or reverse mortgage. This is because "Michigan law holds that a mortgage assignee has the same priority rights as the original mortgage assignor. . . even if another party acquires and records a junior interest in the subject property before the assignee of the senior mortgage records the assignment through which it obtained its senior interest." *Sterling Mortg. & Inv. Co. v. CitiMortgage, Inc.*, No. 14-10709, 2015 U.S. Dist. LEXIS 35628, at *48 (E.D. Mich. Mar. 23, 2015) (internal quotation omitted). Therefore, as the assignee of the original mortgage, CMI possessed the requisite legal authority to commence foreclosure proceedings on the Property and Willis's claims to the contrary should be dismissed.

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that defendants' motions to dismiss Willis's complaint **[10, 11]** be **GRANTED**.


Dated: August 12, 2015                          s/David R. Grand
Ann Arbor, Michigan                             DAVID R. GRAND
                                                United States Magistrate Judge

15

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 12, 2015.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager